Eugene TANZYMORE

v.

**BETHLEHEM STEEL CORPORATION**

v.

**YOUNG–POSEN, INC.**

Civ. A. No. 69–675.

United States District Court,
E. D. Pennsylvania.

Jan. 21, 1971.

See also, D.C., 325 F.Supp. 895.

Edmund P. Turtzo, Bangor, Pa., and Renald S. Baratta, Easton, Pa., for plaintiff.

Robert H. Holland, Bethlehem, Pa., for Bethlehem Steel Corp.

## MEMORANDUM AND ORDER

JOHN. W. LORD, Jr., Chief Judge.

Presently before the Court is defendant Bethlehem Steel Corporation's motion to dismiss this action on the ground that this Court lacks jurisdiction, in that Eugene Tanzymore is a citizen of Pennsylvania. Upon consideration of oral argument and the briefs submitted, the Court grants defendant's motion.

Original jurisdiction is conferred on this Court in all civil actions where the matter in controversy exceeds the sum or value of $10,000.00, exclusive of interest and costs, and where it is between citizens of different states. 28 U.S.C.A. § 1332(a) (1).

Both the depositions taken of the plaintiff, and his work record, indicate that he is at best a resident of Pennsylvania, and may, in fact, be a citizen of no state. It is well settled that the fact of being a resident of no state does not confer diversity jurisdiction upon the district courts. Pemberton v. Colonna, 189 F.Supp. 430 (E.D.Pa.1960); Pannill v. Roanoke Times Co., 252 F. 910 (W.D. Va.1918).

In *Pemberton*, the plaintiff had been a resident of Pennsylvania from 1927–1950, at which time she moved to Mexico, where her presence was authorized by a tourist card, renewable every six months by the Mexican government. At the time of instituting the action, she owned property in Pennsylvania, maintained a bank account here, and filed her income tax within the Eastern District. However, at the time of bringing the action, plaintiff had been a resident of Mexico for ten years, and had no intention of returning to Pennsylvania; indeed, she planned to dispose of her American real estate holdings as soon as it was economically feasible for her to do so. The court found that she was a citizen of the United States, but at the same time, held no state citizenship.

While the *Pannill* case, strongly relied upon by defendant, can be distinguished, we believe that its conclusion, that one not possessing state citizenship is barred from bringing a diversity action, is unquestionably correct. There, plaintiff wandered throughout the country, seeking to obtain financial assistance to offset medical expenses incurred as a result of a crippling accident. While plaintiff there expressed an intention not to return to any state which he had previously visited, and was clearly not a resident of any one state, plaintiff in the instant case has frequently stated that he intended to return to Ohio. However, all that is before us is plaintiff's unsupported assertion that he so intends. As will be made evident *infra*, this is not enough.

Plaintiff cites the case of Shreveport Long Leaf Lumber Co. v. Wilson, 38 F. Supp. 629 (W.D.La.1941) for the proposition that domicile has the same meaning as citizenship, and that it imports resi-

dence in a given state with the intention of remaining. We believe that the case is distinguishable. There plaintiff sought to prove that the defendant was not a resident of Louisiana, but remained one of Arkansas. However, defendant had sold his businesses in Arkansas; moved to Louisiana; lived in an apartment there in a building which he owned; maintained an auto dealership; and voted. In the instant case, as will be seen, plaintiff has virtually no ties with Ohio.

Plaintiff asks that the fact that he has not voted in Ohio not be given controlling importance, and cites Watters v. Ralston Coal Co., 38 F.Supp. 16 (M.D. Pa.1941). As here, plaintiff in *Watters* was required to be absent from Ohio for long periods of time; but asserted that he remained a resident of that state. While *Watters* did not vote in Ohio, he stored six rooms of furniture there, and maintained a safe deposit box. Plaintiff here not only does not vote in Ohio; he neither owns nor maintains any property, real or personal, nor does he have a bank account.

Plaintiff urges in his brief that his entire deposition be read, that only there can the full import of his intention to return to Ohio be gleaned. This Court has of course read this deposition many times, and searchingly. They reveal only a self-serving allegation on the part of plaintiff to leave this jurisdiction and return to Ohio. Quoting from the deposition:

Q. [By plaintiff's counsel]: What was your residence at that time? [The time of the accident, March 27, 1967.]

A. Where I lived before I—where I came from?

Q. Yes.

A. Well, I think I know what you are getting at. 7418 Lynwood Street, Cleveland, Ohio.

Q. Now, were you a member of any union at that time?

A. Yes.

Q. What union were you a member of?

A. Of Local 500, Toledo, Ohio.

Q. And what is the name of that union?

A. The Hod Carriers and Laborers Union, affiliated with the C.I.O. [Notes of Deposition 46; hereinafter N.D.]

The only connection with Ohio which plaintiff maintains is his union membership, which we shall assume is current, although no allegation to that effect has been introduced.

A thorough reading of the deposition indicates no other connection with another jurisdiction. Indeed, before coming to Pennsylvania, plaintiff worked in Maryland and West Virginia, and Saint Charles, Missouri. Quoting further from the deposition:

Q. [By defendant's counsel]: Were all of these jobs that you did at Bethlehem Steel right after each other, or did you have assignments somewhere else in between?

A. We had assignment [sic] elsewhere. I went down into West Virginia, and then I had an assignment of staying at home until the other job got ready to be done.

Q. Where did you stay at home?

A. During that time when I was going home, I went to Cleveland, Ohio.

Q. Would you be able to tell us when you lived in Cleveland, Ohio?

A. Oh, I lived in Cleveland, Ohio, *off and on*, ever since '65. *Off and on.* [Emphasis supplied.] [N.D. 9–10.]

Plaintiff advances the argument that he is a resident of Pennsylvania at this time because it is a medical necessity for him to remain near to those physicians who are presently treating him, and that, because of his infirmities, it is easier for him to remain in this jurisdiction awaiting the outcome of this litigation than it is to return to Ohio. This is undoubtedly correct. But even the question

of plaintiff's medical care lends credence to the premise that he is not committed to any area. Plaintiff testified in his deposition that he made Pennsylvania his home under doctor's orders, but that, " * * * if I felt like I wasn't going to get well, like I did before, I'd go somewhere where I can." [N.D. 51.]

Aside from his union membership, plaintiff advances only one indicia of Ohio citizenship. Quoting again from the transcript:

Q. [By plaintiff's counsel]: Was there any address required of you when you came to work here?

A. As I said before, 7418 Lynwood Street, Cleveland, Ohio.

Q. For what purpose did you give that address?

A. I give [sic] that address just in case something happened to me, then who to contact, you know, where to contact and where I live.

Q. That's where you lived at the time?

A. Yes.

Q. And you came here solely for the purpose of the work?

A. Yeah. Yeah. Sure.

Q. You didn't come here to live, did you?

A. Oh, no. No.

Q. Nothing further. [N.D. 48–49.] [1]

■ "One's testimony with regard to his intention [to make a particular place his domicile] is of course to be given full and fair consideration, but is subject to the infirmity of any self-serving declaration, * * *" District of Columbia v. Murphy, 314 U.S. 441, 456, 62 S.Ct. 303, 310, 86 L.Ed. 329 (1941).

"* * * What is in another man's mind must be determined by what he does as well as by what he says.

"Residence in fact, and the intention of making the place of residence one's home, are essential elements of domicile. Words may be evidence of a man's intention to establish his domicile at a particular place of residence, but they cannot supply the fact of his domicile there. In such circumstances, the actual fact of residence and a real intention of remaining there, as disclosed by his entire course of conduct, are the controlling factors in ascertaining his domicile. * * *" Stine v. Moore, 213 F.2d 446, 448 (5th Cir. 1954).[2]

Plaintiff has been able to advance only his assertion that he intended to return to Ohio. He has lived there only on an "off and on" basis. He maintains no property; has no bank accounts; does not vote; does not own or operate a motor vehicle, indeed, his last operator's license was from the state of Washington, and expired in 1963. This Court is unable to find that plaintiff is a citizen of the state of Ohio.

## ORDER

And now, to wit, this 21st day of January, A.D.1971, it is ordered that defendant's motion to dismiss for want of jurisdiction be and the same is hereby granted.

And it is so ordered.

---

1. Defendant has submitted for the Court's consideration work records of plaintiff which purport to show that he had given other than Ohio addresses as his home address on earlier work records. However, because of the informal nature of these documents, we have not considered them in our determination. See Wigmore on Evidence, § 1277, page 564 (3 ed. 1940).

2. "[M]otive may be very important in deciding as a fact whether the alleged intention [to establish a domicile] was genuine * * * [i]t may lead, or help lead, the trier of the fact to conclude that there really was not a change of domicile at all, but the appearance of a change made for the purposes of securing some personal advantage. This effect of motive has been recognized by the courts." Goodrich, Conflict of Laws, § 29, pages 67–68 (3 ed. 1949).